## McKelvy *v.* Berry, Appellant.

*Promissory notes—Action by indorsee—Defense.*

In an action by an indorsee of a promissory note against the maker where there is no evidence that the maker had any defense against the payee, it is proper for the court to refuse to charge as follows: "The note in suit, payable on demand, without interest, was due forthwith and an action thereon by the payee against the makers might have been brought and maintained the day after its date."

In such a case it is also proper to refuse to charge as follows: "The note having been transferred six days after its date was overdue and dishonored, and the indorsee took it subject to any defense which the makers or either of them had at or before the time of the transfer of it."

The holder of a joint promissory note payable on demand is not required to make demand and proceed to collect the note, unless requested so to do by one of the makers alleging himself to be a surety, if the holder brings suit within the period required by the statute of limitations.

In an action by a second indorsee on a promissory note given to a bank where the note itself shows that the bank indorsed the note to the order of the first indorsee, and the latter indorsed it to the plaintiff, evidence is immaterial to the effect that the first indorsee paid the amount of the note to the bank, that at the time he was an employee and a boarder in the family of one of the joint makers, and that he knew that the defendant had signed the note as surety for the other joint maker.

Argued May 19, 1902.     Appeal, No. 66, April T., 1902, by defendant, from judgment of C. P. Venango Co., April T., 1900, No. 39, on verdict for plaintiff in case of A. H. McKelvy *v.* Peter Berry.     Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.     Affirmed.

Assumpsit by a second indorsee on a promissory note.     Before CRISWELL, P. J.

At the trial it appeared that the note sued upon was in the following form :

"$400.00.                  BUFFALO, N. Y., Nov. 28, 1894.

"On demand I promise to pay to the order of Columbia National Bank of Buffalo four hundred dollars.     Value received, at Columbia National Bank of Buffalo.

                          (Signed)      "DAVID BERRY,
                                        "PETER BERRY.

"No. 6654.   Due ———
"(Indorsements.)

"Dec. 4, 1894.

" Pay to the order of Lucian C. Jackson without recourse to this bank in any event.

      " Columbia National Bank of Buffalo.

        (Signed)      " Clifford Hubbell, Cashier.

"Nov. 28, 1899.

" Pay to the order of A. H. McKelvy.

        (Signed)      " Lucian C. Jackson."

When defendant was on the stand the following offer was made on his behalf :

We further offer to prove by the witness and other evidence that the note was signed in blank by him and delivered to his brother David for the accommodation of David and without consideration to the witness. That as between himself and his brother David, he signed the note as surety ; that the indorsee, Jackson, had knowledge of that fact and of the purpose for which it was given. This to be followed by evidence that the note was filled up for $400 by his brother David or at his instance ; and that after its maturity, with knowledge of the fact, Jackson paid the note at the bank in whose hands it then was, and took the note away with him from the bank, and that he was at the time an employee of and a boarder in the family of David Berry, the other maker.

Which offer was objected to by counsel for the plaintiff as being incompetent, irrelevant and immaterial, in confliction with the affidavit of defense and not admissible under the pleadings.

Upon which the court ruled as follows : This proposition or offer may all be true and yet not constitute any defense to this action. Jackson, according to the offer, paid the money to the bank, but according to the note the bank at the same time transferred the note to Jackson, therefore he held the note for value. Assuming it was overdue, he became therefore the bona fide holder of the note with the right to sue and recover. The case to which you refer shows that while the party went to the bank and paid the amount of the note, he did not ask for a transfer to himself, but from the face of the instrument it does not appear that Jackson was paying the debt of another. The bank had good title to this note ; having good title, can they not transfer it by indorsement even after maturity?

We will have to sustain the objection; your offer as made would constitute no defense.   Bill sealed.  [4]

The defendant renews the above offer and offers further to prove in connection therewith that at the time of the transfer by the bank in Buffalo to Jackson and continuously from that time to September, 1895, David Berry was living and solvent and that he was able to pay and the note collectible during the entire period from its date and until September, 1895.   After which David Berry became insolvent and died, leaving no estate whatever, and that Jackson held the note from December 4, 1894; that he never made any demand of the defendant until February 13, 1899, and that he thereafter held it until the alleged transfer to the present plaintiff.   This for the purpose of proving that the plaintiff is not a bona fide holder of the note, that he took it subject to the equities existing between Peter Berry and his brother David.

To which offer the plaintiff objected as being incompetent, irrelevant and immaterial, in contradiction to the affidavit of defense and not admissible under the pleadings in this case, and no defense to the plaintiff in this action if true.

To which the court ruled as follows: Being of the opinion that the matters referred to would not constitute a defense to this note, we would still have to say to the jury that the defendant is liable.   We sustain the objection and overrule the offer.   Bill sealed.  [5]

The court charged in part as follows:

As to the defense to the note various facts have been shown on the part of the defendant, but the only material fact, that is the only fact we deem material and we so instruct you, relates to the conversation had between Peter Berry and Mr. Jackson in the month of January, 1895.   He says he was at Buffalo or at the home of his brother, where Jackson then resided, on January 14, 1895; that Jackson was in his bedroom and he then had a conversation with Jackson in which Jackson stated that the note was settled between him and David Berry and that it would give Peter Berry no further trouble.   From this conversation Peter alleges and asks you to find either that the note when paid at the bank was paid by David or by Jackson at the request of David, for the purpose and with the intent of

extinguishing the note as against Peter Berry. If the payment to the bank was made for the purpose of wiping out the note as an obligation of Peter Berry that would be true and there ought not to have been any assignment to Jackson, and if the witness Jackson so informed Peter at the time as alleged by Peter, that would constitute good defense in this action. For this reason, whether the note was paid and extinguished as against Peter or not would not make any difference, for the reason that if Jackson so informed Peter, the tendency would be to lull him to sleep and from taking such measure, to secure himself as he otherwise would. . . .

On the part of the plaintiff as in rebuttal it is denied that Jackson told Peter Berry that the note had been settled; he denies that he told him that it would make him no more trouble. On the contrary, Jackson says that he paid for the note with his own money, and in support of his testimony he has offered a check in his favor made by this Automatic Wind Motor Company, bearing date December 4, 1894, the date upon which the transfer was made by the bank to him of this note. He received the check bearing that date and says that with the proceeds of this check payable to himself he lifted this note at the bank and had the transfer made to himself, and that he thereby became the owner of the note in his own right.

Defendant presented these points:

2. The note in suit, payable on demand, without interest, was due forthwith and an action thereon by the payee against the makers might have been brought and maintained the day after its date. *Answer :* This proposition does not arise upon the evidence, it is unnecessary to so decide and we decline to do so. [1]

3. The note having been transferred six days after its date was overdue and dishonored, and the indorsee took it subject to any defense which the makers or either of them had at or before the time of the transfer against it. *Answer :* We decline to so charge and it is unnecessary to so decide as there is no evidence that the defendant had any defense to the note in the hands of the bank. [2]

6. If the jury find that at the time of making the note in suit, and for a year and upwards thereafter, David Berry was solvent, or that by reasonable diligence the amount of the note

could have been collected from him, and that no effort was made to collect it by the holder and no notice of nonpayment was given to Peter Berry or demand made of him until February 13, 1899, and after David Berry had become insolvent, that such delay was prejudicial to the defendant and he was thereby released from all liability upon the note in the hands of Lucien C. Jackson or his assignee, and the plaintiff cannot recover. *Answer:* Refused. [3]

Verdict and judgment for plaintiff for $455.60. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them; (4, 5) rulings on evidence, quoting the bill of exceptions.

*J. H. Osmer*, with him *A. R. Osmer* and *N. F. Osmer*, for appellant.—When a stranger calls upon the holder of a note that is overdue, inquires for the note and asks the holder if he is willing to receive the money upon it, and pays the amount due, declining to have it canceled and takes it away with him, the transaction amounts to a payment and not a sale of the note: Edwards on Bills and Promissory Notes, 536; Burr v. Smith, 21 Barb. (N. Y.) 262; Harrison v. Hicks, 27 Am. Dec. 638; Sanford v. McLean, 3 Paige's Ch. 117.

A promissory note, payable on demand, if negotiated by the payee a long time after made, is in the hands of his indorsee subject to all the equities to which it would have been liable in the hands of the payee himself: Furman v. Haskin, 2 Caines' Rep. (N. Y.) 369.

This note, payable on demand, without interest, was not a continuing security: Wethey v. Andrews, 3 Hill (N. Y.), 582.

If the security be not on interest it may be an exposition of the contract to hold that no time of credit is contemplated and that the demand should be made as quickly as the law will require upon a check or sight draft: Crim et al. v. Starkweather, 88 N. Y. 343.

*James S. Carmichael*, with him *Charles W. Mackey* and *Edward E. Hughes*, for appellee.

OPINION BY BEAVER, J., October 13, 1902:

The defendant was joint maker with his brother David in a

promissory note, dated November 28, 1894, payable on demand, to the order of the Columbia National Bank of Buffalo, for $400. It is not alleged that as against the bank, the original holder of the note, the defendant had any defense. The plaintiff claims that Lucien C. Jackson, to whom the bank assigned the note and by whom it was transferred to him, had all the rights of the original payee against the defendant. Whether, therefore, the proposition as contained in the second point of the defendant that " the note in suit, payable on demand, without interest, was due forthwith, and an action thereon by the payee against the maker might have been brought and maintained the day following its date " was altogether immaterial. Even if it were so, the relative rights and duties of the plaintiff and defendant would not be in any respect changed.

So also as to the third point that "the note having been transferred six days after its date was overdue and dishonored, and the indorsee took it subject to any defense which the makers, or either of them, had at or before the time of the transfer against it." There is no allegation that the defendant had any defense to the payment of the note in the hands of the bank. If, therefore, Jackson succeeded to the rights of the bank, by virtue of the transfer to him, the question became wholly immaterial. As was very properly said by the court, " There is no evidence that the defendant had any defense to the note in the hands of the bank," and, if the assignment to Jackson was bona fide and for a valuable consideration, he succeeded to all the rights which the bank had under the note.

There seems to be an underlying and unexpressed thought in the mind of the appellant that the rights of Jackson are the same as if the note had been paid by David Berry. This, however, does not appear in the points, and the fact as to whether or not the note was paid for David Berry by Jackson was left to the jury and found against the appellant and is, therefore, eliminated from the case, so far as our consideration of it is concerned.

The court also properly refused the defendant's sixth point contained in the third assignment of error. We know of no law in Pennsylvania, and have not been referred to any, which

requires the holder of a promissory note, payable on demand, even if the plaintiff or Jackson, through whom he claimed, knew that Peter Berry was surety for his brother, to made demand and proceed to collect the note, unless required so to do by the party alleging himself to be surety, if suit be brought within the statutory period required by the statute of limitations.

The offers made by the defendant, as contained in the fourth and fifth assignments of error, were properly rejected. If all the facts stated therein had been proved, they would have constituted no defense on the part of the defendant to the payment of the note.

The court permitted the pleadings to be amended, so that the fact of payment could be given in evidence, and the plaintiff was allowed to testify as to a conversation between himself and Jackson, after the assignment of the note to the latter, that the note had actually been paid by him at the request of the brother of defendant and that he would, therefore, have no further trouble in regard to it. The general charge of the court upon this subject was full and fair, and the jury instructed to find that, if payment was so made, it was a good defense, and that " whether the note was paid and extinguished as against Peter or not would not make any difference, for the reason that, if Jackson so informed Peter, the tendency would be to lull him to sleep and from taking such measures to secure himself as he otherwise would."

The main question in the case was whether the defendant's or Jackson's version of the conversation between them in regard to the note was the correct one. That question, with all the collateral facts relating thereto, was fairly submitted to the jury and their finding is justified by the evidence. The defendant presented all the relevant and material facts of his defense to the jury. There is nothing in the charge of the court in relation thereto concerning which he has good reason to complain. His points were properly answered and with the judgment entered upon a verdict, justified by all the evidence in the case, we cannot interfere.

Judgment affirmed.